UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TARA REED CHERNECKE, | ) |
| | ) |
|     **Plaintiff,** | ) |
| | )    1:13-cv-805 |
|     v. | ) |
| | ) |
| | ) |
| STERLING INFOSYSTEMS, INC., | ) |
| | ) |
|     **Defendant,** | ) |

**COMPLAINT**

### I.    INTRODUCTION

1. This is an action for damages brought by an individual consumer against the Defendant for violations of the Fair Credit Reporting Act (hereafter the "FCRA"), 15 U.S.C. §1681 *et seq.*, *as amended*. Under the FCRA, "consumer reports" subject to the statute's protections include not simply those used in establishing the consumer's eligibility for credit, but also those used for "employment purposes." 15 U.S.C. § 1681a(d)(1)(B).

2. The FCRA was enacted "to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy," 15 U.S.C. § 1681(a)(4), by operating "in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy" of the consumer information they disseminate. 15 U.S.C. § 1681(b). Congress included in the statutory scheme a series of due-process-like protections that impose strict procedural rules on "users" of "consumer reports" such as Sterling Infosystems, Inc., ("Sterling"). This action involves Defendant's systematic violation of several of those important rules.

3. Plaintiff Tara Reed Chernecke was denied employment as a registered nurse based on a standardized background screen conducted by Sterling pursuant to an agreement with Norton Healthcare. Sterling determined that Plaintiff was not qualified for employment with Norton Healthcare based on the existence of a criminal record in the name of another person. In violation of the FCRA, Sterling willfully and negligently failed to provide Plaintiff with the mandatory "pre-adverse action notice" and a copy of the damaging background report it sold to Norton Healthcare *before* the adverse action occurred, as required by 15 U.S.C. § 1681b(b)(3). Every year, thousands of individuals who have applied for employment and have been subjected to Sterling's background reports have been similarly aggrieved by the same willful violation of 15 U.S.C. § 1681b(b)(3).

4. In addition to being aggrieved by Sterling's willful and negligent violation of 15 U.S.C. § 1681b(b)(3), Plaintiff was also victimized by Sterling's separate violation of the FCRA because Sterling willfully and negligently failed to follow "reasonable procedures to assure maximum possible accuracy," as mandated by 15 U.S.C. § 1681e(b).

## II.   PARTIES

5. Plaintiff Tara Reed Chernecke is an adult individual residing in Elizabeth, Indiana.

6. Defendant Sterling Infosystems, Inc. is a business entity that regularly conducts business in the Southern District of Indiana, and has principal places of business located at 5750 West Oaks Blvd., Suite 100, Rocklin, California 95765 and at 249 West 17th Street, Floor 6, New York, New York 10011, and also maintains regional headquarters in Independence, Ohio.

## III.   JURISDICTION AND VENUE

7. This Court has jurisdiction over this matter based upon 28 U.S.C. § 1331 and 15 U.S.C. §1681p in that all claims brought arise under the federal Fair Credit Reporting Act, 15

U.S.C. § 1681 *et seq*. Venue is properly in this District, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District.

### IV.  STATEMENT OF FACTS

8. Sterling is among the largest of this nation's employment background screening companies, *i.e.,* those that provide "consumer reports," as defined by 15 U.S.C. § 1681a(d)(1)(B), to prospective employers. *See* http://www.sterlinginfosystems.com/sterling-infosystems-new-headquarters-cleveland-metropolitan.htm.

9. Norton Healthcare contracted with Sterling to provide consumer reports in the nature of background investigations on prospective employees who apply for employment with Norton.

10. Plaintiff Tara Reed Chernecke is a single mother of two young children, and recently moved back to the area of North Kentucky-South Indiana from Virginia.

11. Plaintiff is licensed as a registered nurse in the states of Indiana and Kentucky. Plaintiff's Indiana nursing license was issued after she successfully passed a FBI criminal background check, which included fingerprinting.

12. On or about January 30, 2013, Plaintiff interviewed with Norton for the position of pediatric registered nurse.

13. On February 12, 2013, Plaintiff had a second interview with Norton, both for the position of pediatric registered nurse and for the position of case manager.

14. On February 13, 2013, Plaintiff completed an online application for employment with Norton.

15. In connection with her online application, Plaintiff consented to a background report by an outside agency used by Norton, and for that purpose provided, among other things,

3

her full name, full maiden name, full date of birth, full social security number, driver's license number and current and former residential addresses for the past seven years.

16.     On February 13, 2013, Norton telephoned Plaintiff and offered her employment, which she accepted.  By letter dated February 14, 2013, Sherrie Barnett, of Norton Healthcare Human Resources stated, among other things, as follows:

> Dear Tara:
>
> On behalf of Norton Healthcare, please accept my congratulations on being hired for the position of RN-NCA.
>
> ***
>
> I am excited that someone of your caliber has decided to join our organization, which has been selected as one of the Best Places to Work in Kentucky.  Our patients are not the only ones who receive the best treatment, and we look forward to partnering with you in your career development.
>
> You will report to Cherie Gaither at Norton Clinical Agency.  Your base pay rate will be $30.29 per hour with an additional 15% for hours that are eligible for shift differential.  Your rate of pay for orientation will be $20.00 per hour.
>
> ***
>
> Your career begins with Norton Healthcare Onboarding on Monday February 25, 2013.

17.     The employment offer stated that it was "contingent upon successfully competing pre-employment requirements."

18.     On February 15, 2013, Plaintiff completed a drug screen test required by Norton.  The test results were negative.

19.     Plaintiff was then scheduled for orientation sessions with Norton, and rescheduled, four times: February 25, March 4, March 11 and March 18, 2013.

20.     On March 15, 2013, Plaintiff received a telephone call from Norton Human Resources that the offer for employment was being rescinded on the purported basis that she had failed to meet pre-employment screening requirements.  No other information was provided.

4

21. Under the FCRA, a "user" of a consumer report who intends to take an "adverse action" on a job application "based in whole or in part" on information obtained from the consumer report must provide notice of that fact to the consumer-applicant, and must include with the notice a copy of the consumer report and a notice of the consumer's dispute rights under the FCRA, *before* taking the adverse action.  15 U.S.C. § 1681b(b)(3)(A).  After an adverse action occurs, the consumer employment applicant must receive a second notice, mandated by 15 U.S.C. §1681m.

22. The reasons for the "pre-adverse action" requirement with regard to employment situations are to alert the job applicant that she is about to be rejected based on the content of a report, and provide her an opportunity to challenge the accuracy or relevancy of the information with the consumer reporting agency or the user before that job prospect is lost.

23. In addition to providing background reports, Sterling provides to its employment screening customers an additional service which adjudicates an applicant's suitability for employment with Sterling's customer.  Under this service, Sterling will score an applicant based on an adjudication matrix that the customer develops with Sterling. This service is attractive to Sterling's large customers who constantly hire and promote in large volumes, providing the customer with a remote, outsourced tool to make its employment decisions rapidly and efficiently.

24. As part of this service offered to its employment screening customers, Sterling will itself send out FCRA pre-adverse action and adverse action notices to consumers on behalf of its inquiring customer. At the times relevant hereto, Norton Healthcare used this service provided by Sterling.  Sterling designed this arrangement so that the Pre-Adverse Action notice always gets sent *after* Sterling has scored the application and *after* Sterling has provided Norton with the applicant's background report.

25. Upon being notified over the telephone by Norton Healthcare that the offer of employment was being rescinded, Plaintiff undertook an investigation to determine what screening requirements she had failed to meet, and eventually learned that Sterling had sold a background report on her to Norton Healthcare.

26. Upon learning that information, Plaintiff looked up Sterling's telephone number online and placed a call to Sterling, in which she requested a copy of the information that Sterling compiled on her and sold to Norton Healthcare.

27. On or about March 27, 2013, twelve days after Plaintiff was informed by telephone that the offer of employment was being rescinded, she received in the mail a form letter from "Compliance Department, 6111 Oak Tree Boulevard, Suite 400, Independence, OH 44131." Sterling's regional headquarters are located at that address in Independence, Ohio.

28. The letter from Sterling that arrived on March 27 was dated March 19, 2013.

29. The letter, sent by Sterling in the name of "Norton Healhtcare" (sic), stated in part as follows: "Dear Tara: This letter is to inform you that information contained in a consumer report, if accurate, would prevent Norton Healthcare from extending an employment offer, continuing your current employment or granting a promotion to you at this time." A copy of the letter is attached hereto as Exhibit A.

30. This letter included a copy of the background report that Sterling compiled on Plaintiff and sold to Norton Healthcare. On the first page of the report, it stated "**COMPLETE REPORT - ADVERSE** (REPORT DOES NOT MEET HIRING CRITERIA)." (Emphasis and capitalization in original).

31. The background report included information concerning another individual, named Jessica Tara Wilson, with a conviction for possession of a controlled substance.

6

32. Also on March 27, Plaintiff received another letter from Sterling, also dated March 19, 2013, which stated in part: "Dear Tara: Per your request received by phone on March 19, 2013, I have enclosed a copy of your background check performed at the request of our client, Norton Healthcare." The letter was signed by "Sterling Infosystems, Joanne Bing, Special Operations Generalist" and included a "Confidential Background Screening Report" that made no reference to any adverse public record information in Plaintiff's name. A copy of the letter is attached hereto as Exhibit B.

33. On April 2, 2013, Plaintiff received another letter from Sterling's Ohio address, dated March 26, 2013.

34. The letter dated March 26, 2013, also in the name of "Norton Healhtcare" (sic), stated in part as follows: "Dear Tara: This letter is to inform you that an offer of employment, a continuation of current employment or the granting of a promotion will not be made at this time. This decision was based, either in whole or in part, on information provided to us in a consumer report." A copy of the letter is attached as Exhibit C.

35. As a direct result of Sterling's use of the background report and Sterling's scoring of Ms. Chernecke's employment application, Ms. Chernecke was denied the job opportunity for which she had already been approved at Norton Healthcare.

36. Besides the lost income, Sterling caused Plaintiff humiliation, anxiety, anguish and other forms of emotional harm and distress over being branded a convicted drug offender in a national database accessible to hundreds of employers in her field.

37. Sterling's actions and failures to act as described herein were reckless and willful within the meaning of the FCRA because Sterling knew or reasonably should have known that existing case law required Sterling to comply with section 1681b(b)(3) of the FCRA. *Goode v. LexisNexis Risk & Information Analytics Group, Inc*., 848 F.Supp.2d 532 (E.D. Pa. 2012).

## V.     CAUSES OF ACTION

### COUNT I
### FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681b(b)(3)

38.     Plaintiff realleges and incorporates by reference all preceding allegations.

39.     Plaintiff is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c).

40.     Sterling's background reports are "consumer reports" within the meaning of 15 U.S.C. § 1681a(d).

41.     The FCRA provides that any person "using a consumer report for employment purposes" who intends to take any "adverse action based in whole or in part on the report," must provide the consumer a written description of the consumer's rights under the FCRA, as prescribed by the Federal Trade Commission, before taking such adverse action. 15 U.S.C. § 1681b(b)(3)(A).

42.     For purposes of this requirement, an "adverse action" includes "any . . . decision…..that adversely affects any current or prospective employee." 15 U.S.C. § 1681a(k)(1)(B)(ii).

43.     Defendant Sterling is a "person" that regularly uses background reports for employment purposes.

44.     The FCRA requires Sterling, as a user of consumer reports for employment purposes, before taking adverse action based in whole or in part on the report, to provide to the consumer to whom the report relates, a copy of the report and a written description of the consumer's rights under the FCRA.  15 U.S.C. § 1681b(b)(3)(A)(i), (ii).

45.     Sterling willfully and negligently violated section 1681b(b)(3) of the FCRA by failing timely to provide Plaintiff the following before using such reports:  (a) the required pre-adverse action notice; (b) a copy of the consumer report; and, (c) a written description of the

8

consumer's rights under the FCRA, and thereby denied the consumers a sufficient time to be able to review and dispute the report before Sterling took adverse action on their employment or promotion applications.

## COUNT II
## FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681e(b)

46. Plaintiff realleges and incorporates by reference all preceding allegations.

47. Sterling is a "consumer reporting agency," as defined by FCRA, 15 U.S.C. § 1681a(f).

48. At all times pertinent hereto, the Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

49. At all times pertinent hereto, the above-mentioned background report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

50. Sterling violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's background report and the files it published and maintained.

51. As a result of Sterling violations of 15 U.S.C. §1681e(b), Plaintiff Chernecke suffered actual damages including but not limited to: loss of employment income and benefits, damage to reputation, embarrassment, humiliation and other mental, physical and emotional distress.

52. The violations by Sterling were willful, rendering Defendant liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Sterling was negligent, which entitles Plaintiff to recovery under 15 U.S.C. §1681o.

53. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Sterling in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

### Jury Trial Demand

54. Plaintiff demands trial by jury on all issues so triable.

WHEREFORE, Plaintiff seeks judgment in Plaintiff's favor and damages against Defendant Sterling, for the following requested relief:

    A.    Actual damages;

    B.    Statutory damages;

    C.    Punitive damages;

    D.    Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n and 1681o; and

    E.    Such other and further relief as may be necessary, just and proper.

        Respectfully submitted,
        **TARA REED CHERNECKE**

    By:    s/ Larry P. Smith
        Attorney for Plaintiff

Dated: May 15, 2013

Larry P. Smith (Atty. No.: 6217162)
SMITHMARCO, P.C.
205 North Michigan Avenue, Suite 2940
Chicago, IL 60601
Telephone: (312) 324-3532
Facsimile: (888) 418-1277
E-Mail: lsmith@smithmarco.com